**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1362
_____

DR. BEVERLEY M. HARRIS,
                    Appellant

v.

THE BOZZUTO GROUP; THOMAS S. BOZZUTO, Founder of the Bozzuto Group;
TOBY BOZZUTO, Operating Officer, Bozzuto Group Partners of the Bozzuto Group;
DAVID CURCIO, Regional Manager, The Park Apartments; MICHELLE
DEMETRIOU, Manager The Park Apartments; JEFF SESSIONS, U.S. Attorney in his
individual and official capacities, U.S. Department of Justice; CHRISTOPHER WRAY,
Director of the Federal Bureau of Investigation; AN UNKNOWN NUMBER OF
UNKNOWN AGENTS OF FEDERAL BUREAU OF INVESTIGATION; STUART
BRADIE, in his Official and Individual capacities as Chief Executive Officer of KBR,
Inc.; KBR, INC; STEFAN GRESS
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-18-cv-10277)
District Judge:  Honorable Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2020

Before:  JORDAN, BIBAS and PHIPPS, Circuit Judges

(Opinion filed: July 21, 2020)

_____

OPINION[*]

_____

PER CURIAM

Appellant Beverley M. Harris appeals the District Court's order granting the defendants' motions to dismiss and for summary judgment. We will affirm.

I.

In 2017, Harris moved into an apartment complex in Roselle, NJ and, within her first months there, she allegedly found video cameras hidden in some air conditioning vents. Appellant's Br. 5 ¶ M, ECF No. 5. These cameras, Harris contends, were installed by her property manager at the direction of the Federal Bureau of Investigation, which has engaged in a long-simmering conspiracy to conceal, among other things, the FBI's implantation of tracking devices in her body. Appellant's Br. 6 ¶ T. The FBI purportedly began implanting these devices in Harris's body in 2009 after years of surveillance of, and intervention, in Harris's life. App. 116, ECF No. 22. Harris believes that the FBI's surveillance and decision to turn her into an "unwilling research subject" stemmed from her denial of an FBI request that she act as an "undercover spy on the U.S. Army[]," and her 2002 decision while working as a contract specialist at Andrews Airforce Base to

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

report her manager for alleged extortion. App. 112–13 (including Third Am. Compl. 5–6 ¶¶ 14–15, 20–21, 27).

Over the years, Harris has litigated many facets of these allegations in different venues, against a host of defendants. Indeed, Harris has filed suit on substantially similar or the same facts as those presented in this case in at least two other federal courts. First, in 2011, before the U.S. District Court for the District of Columbia, Harris sued the Attorney General (then Eric Holder), the FBI, and other federal agencies and officials for retaliating against Harris for her decision to report her manager for extortion. These parties allegedly violated, among other things, Harris's First Amendment and Fifth Amendment rights. See generally Harris v. Holder, 885 F. Supp. 2d 390 (D.D.C. 2012). By published opinion, the District Court dismissed Harris's case on a motion to dismiss reasoning that she failed to state any claim on which relief could be granted. Id. at 402.

Then, in 2018, Harris filed another case in the U.S. District Court for the Southern District of New York. Harris, as she had in her earlier 2011 case, sued the Attorney General (then Jeff Sessions), the FBI, and others, but this time, Harris explicitly alleged that the FBI had implanted tracking devices into her body under the false pretenses of performing a colonoscopy and a facial procedure. Harris v. Sessions, 1:18-cv-5245-CM, 2018 WL 9596844 (S.D.N.Y. Aug. 3, 2018). Ultimately, the District Court dismissed Harris's New York case as frivolous under 28 U.S.C. § 1915—governing cases *in forma pauperis*—because it "lack[ed] an arguable basis either in law or in fact." Id. at *1 (quoting Neitzke v. Williams, 490 U.S. 319, 324–25 (1989)) (emphasis added).

While Harris's case remained pending in New York, she filed this case in the U.S. District Court for the District of New Jersey. Harris first sued her property management company—Appellee the Bozzuto Group and its affiliates—but eventually added as defendants the same governmental parties she had sued in New York and in Washington, D.C. eight years earlier. App. 208–09, ECF No. 22. Harris raised five causes of action against Appellees: four <u>Bivens</u> claims,[1] and one defamation claim. App. 209. Appellees separately filed three motions to dismiss and a motion for summary judgment, all of which the District Court granted by order dated February 11, 2020. App. 208.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review the District Court's grant of the defendants' motions to dismiss de novo. <u>Newark Cab Ass'n v. City of Newark</u>, 901 F.3d 146, 151 (3d Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" <u>Fleisher v. Standard Ins.</u>, 679 F.3d 116, 120 (3d Cir. 2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). We also review the grant of the defendants' motion for summary judgment de

---

[1] The Supreme Court's decision in <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u> established the framework for litigants to sue federal actors for damages arising from constitutional violations. 403 U.S. 388 (1971). In this case, Harris sought damages arising from the alleged violation of her First, Fourth, Fifth, and Eighth Amendment rights.

novo.  Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 100 (3d Cir. 2015).  Summary judgment is appropriate where, viewing the evidence in the light most favorable to the respondent, "no genuine dispute exists as to any material fact, and the moving party is entitled to judgment as a matter of law." Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013).

III.

Although Harris contends that the District Court erred in "[t]his . . . Bivens" case by "not focusing on Appellant's five Cause[s] of Action[,]" the District Court did address each cause of action and found that Harris could not—even while assuming all facts alleged in her Third Amended Complaint to be true and drawing all reasonable inferences in her favor—establish the prima facie case for any claim.  We discern no material error in the District Court's analysis and conclude that the record supports affirmation of its decision.[2]

As to the governmental defendants, the District Court reviewed Harris's claims against each and determined that her allegations could not sustain a Bivens claim under either an official or individual capacities theory.  Even if Harris could establish an official or individual capacity Bivens claim against any named defendant, the District Court

---

[2] While the District Court, in ruling on the Bozzuto Group's Motion for Summary Judgment, failed to articulate its summary judgment analysis explicitly, the record on appeal still supports affirmation of the District Court's decision.  In reaching its decision, the District Court accepted all facts in the Third Amended Complaint to be true and drew all reasonable inferences in favor of Harris, and even then, the District Court could not identify a cognizable claim.  App. 208–11, ECF No. 22.

noted that such claims would otherwise be barred by the applicable two-year statute of limitations because the principal alleged wrongful government actions occurred in or around 2009 or 2010 when Harris purportedly rejected an FBI request to spy on the U.S. Army. See, e.g., Dique v. New Jersey State Police, 603 F.3d 181, 184 (3d Cir. 2010) (explaining the application of New Jersey's two-year statute of limitations to a litigant's civil rights claim and concluding that the claim was time barred). Having reviewed the record, we agree.

Regarding the non-governmental parties, the District Court rightly concluded that Harris had not pled any facts to support Bivens liability against private actors. See, e.g., Max v. Republican Comm. of Lancaster Cnty., 587 F.3d 198 (3d Cir. 2009) (providing an illustration of the relative difficulty of establishing a Bivens claim against private actors).

Regarding the defamation claim, even while liberally construing the Third Amended Complaint, the District Court could not identify any allegation that the parties had published false statements about Harris to any third party—a legal prerequisite to recovery under a claim for defamation. Having reviewed the record, we agree.

Finally, as to claims Harris made against a host of medical doctors allegedly involved in the implantation and/or conspiracy to conceal the implantation of devices in her body, the District Court again properly concluded that Harris failed to allege any facts in the Third Amended Complaint to support a Bivens claim or any other claim against these persons. The District Court, again while reading the Third Amended Complaint liberally, found a complete absence of allegations to show that Harris had sued any

6

Veterans Administration doctors in accordance with the Federal Tort Claims Act as required under 28 U.S.C. § 2401(b) (providing a two-year statute of limitations on tort claims against the United States and its agents), or allegations on which to conclude that the District Court had personal or subject matter jurisdiction over any of the doctors.  In the absence of such allegations, the District Court properly concluded that Harris could not state a claim for relief under any <u>Bivens</u> theory nor under any other "medical malpractice or . . . tort" theory.  App. 210, ECF No. 22.

IV.

Accordingly, we will affirm the judgment of the District Court.  Appellant's "Motion to Cease and Desist" is denied.